Affirmed in part, vacated in part, and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Chief Judge WILKINSON joined. Judge LUTTIG wrote a dissenting opinion.
OPINION
NIEMEYER, Circuit Judge.
Airlines Reporting Corporation (“ARC”) commenced this adversary proceeding in the Chapter 7 bankruptcy of Stanley Marshall Ellison and Kay Dearing Ellison to establish the Ellisons’ liability on their personal guarantees of their travel agency’s indebtedness to ARC and to establish that this indebtedness is nondischargeable under 11 U.S.C. § 523(a)(4). The district court concluded that the Ellisons are indebted to ARC in the amount of $574,678 and that this indebtedness arose from the Ellisons’ defalcation while acting in a fiduciary capacity and therefore is nondis-chargeable. On appeal, we affirm the district court’s conclusion that the Ellisons’ indebtedness on their personal guarantees is nondischargeable but remand for further factfinding with respect to the amount of indebtedness.
I
Stanley Ellison and his wife, Kay Ellison, were officers, directors, and shareholders of Sovereign World Travel, Ltd. (“Sovereign Travel”), a West Virginia corporation operating a travel agency in Charleston, West Virginia. To facilitate its business of selling airline tickets, Sovereign Travel entered into an Agent Reporting Agreement with ARC, a Delaware corporation owned by various airline carriers, that acted as the carriers’ agent for issuing airline tickets and collecting the payment for those tickets from travel agents.
The Agent Reporting Agreement provided for a trust arrangement, under which Sovereign Travel collected payments for the sales of airline tickets, placed the proceeds of those sales in a trust account with the Whitesville State Bank for the benefit of ARC, and reported to ARC weekly on the ticket sales made to customers. The deposited proceeds, excluding Sovereign Travel’s commissions, were designated as “the property of the carrier and [were to] be held in trust until accounted for to the carrier.” After Sovereign Travel submitted its sales report to ARC, ARC paid itself with checks that ARC drew on the trust account. Sovereign Travel and ARC also executed a “Cushion Agreement,” whereby Sovereign Travel agreed to keep a cushion of $100,000 in the same trust account and whereby the parties agreed that withdrawals would “be permitted by ARC drafts only.”
In addition to Sovereign Travel’s undertakings with ARC, ARC required, as a *269 condition of allowing Sovereign Travel to remain on its approved agency list, the personal guarantees of the Ellisons. Accordingly, the Ellisons signed personal guarantees of performance under which they “promise[d] and guaranteed] the unconditional payment by [Sovereign Travel] ... of all indebtedness, liabilities and obligations of every nature and kind arising out of or in connection with the [Agent Reporting Agreement]” between ARC and Sovereign Travel.
In late 1993, Sovereign Travel began experiencing financial difficulties. It began to fail to deposit proceeds of the ticket sales into the trust account with Whites-ville State Bank, and it began to fail to submit weekly sales reports to ARC. When ARC attempted to draw from the trust account, checks were returned for insufficient funds. These failures of performance by Sovereign Travel were the result of the Ellisons’ personal decisions and conduct. The Ellisons were involved in the supervision and handling of the day-to-day operations of Sovereign Travel and the handling of the relationship between Sovereign Travel and ARC. And to the extent that Sovereign Travel in fact went out of trust in its relationship with ARC, the Ellisons acknowledge that they were the ones responsible for the corporation’s actions.
In January 1994, Sovereign Travel filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.[1] And a few months later, in April 1994, the Elli-sons followed, filing this Chapter 7 proceeding.
ARC filed a complaint against the Elli-sons in this bankruptcy proceeding, seeking a judgment of $342,207 based on the Ellisons’ personal guarantees of Sovereign Travel’s indebtedness to ARC and a de-elaratory judgment that the Ellisons’ indebtedness to ARC is non-dischargeable under 11 U.S.C. § 523(a). In its complaint, ARC alleged that because of the Ellisons’ personal involvement in Sovereign Travel’s defalcation to ARC, the liability of the Ellisons on their personal guarantees to ARC is nondischargeable on three grounds: (1) fraud under 11 U.S.C. § 523(a)(2)(A); (2) defalcation “while acting in a fiduciary capacity and/or embezzlement” under 11 U.S.C. § 523(a)(4); and (3) “willful and malicious injury ... to ARC” under 11 U.S.C. § 523(a)(6).
On ARC’S motion filed in the adversary proceeding, the bankruptcy court granted ARC partial summary judgment, finding the Ellisons liable on their personal guarantees and declaring that indebtedness nondischargeable under 11 U.S.C. § 523(a)(4). The court concluded that the Ellisons defaulted while acting in a fiduciary capacity based on the following:
The fiduciary relationship between ARC and [Sovereign Travel] is clearly set out in the [Agency Reporting Agreements], and the defendants’ liability for those obligations is equally clear from the two personal guarantees executed by each of them individually, and the fact that the defendants have both admitted responsibility for handling the weekly sales reports and the trust account at Whites-ville State Bank.
The court explained its conclusions as follows:
The defendants had both a fiduciary duty to ARC in the execution of the [Agency Reporting Agreement] which created an express trust relationship with respect to the Traffic Documents and the trust account at the Whitesville State Bank, and a fiduciary duty to [Sov *270 ereign Travel] as officers and directors to ensure that [Sovereign Travel] complied with the terms of the [Agency Reporting Agreement] so as not to lose its agency listing. Defendants were instrumental in the actions which constituted the defalcation, and thus must be held personally liable for their breach of fiduciary duty.
Following the entry of the partial summary judgment on liability, the bankruptcy court conducted a hearing on damages and held that the Ellisons were obligated to ARC in the amount of $391,062 in principal and $183,616 in prejudgment interest, for a total of $574,678. In computing these damages, the court concluded that the Elli-sons were responsible for reimbursing the airline carriers at the standard coach rates for tickets sold and not at the lower tour rates under which Sovereign Travel allegedly sold the tickets.
On appeal, the district court affirmed, entering judgment in favor of ARC on September 20, 2001. From the district court’s judgment, this appeal followed.
II
The Ellisons contend that the district court erred in holding that their indebtedness to ARC, based on their personal guarantees of Sovereign Travel’s obligations, was not dischargeable under 11 U.S.C. § 523(a)(4). The Ellisons point out that it was Sovereign Travel, not they, who had a fiduciary relationship with ARC and that, as officers and directors of Sovereign Travel, they owed no fiduciary duty to ARC. They also note that being guarantors of Sovereign Travel’s indebtedness did not place them in a fiduciary relationship with ARC. They argue that their fiduciary duty to Sovereign Travel as its officers and directors is “irrelevant” and that Sovereign Travel’s trust relationship with ARC was not imputable to them personally. In sum, the Ellisons contend that neither their fiduciary duty to Sovereign Travel, based on being officers and directors of Sovereign Travel, nor Sovereign Travel’s fiduciary duty to ARC, based on the Agent Reporting Agreement, translates into a fiduciary relationship between the Ellisons and ARC. See, e.g., In re Long, 774 F.2d 875, 878 (8th Cir.1985) (“We question ... the propriety of opposing a corporation’s fiduciary duties on a stockholder-employee in the absence of such a local rule”); In re Cross, 666 F.2d 873, 880-81 (5th Cir.1982) (concluding that the exception to discharge for defalcation while acting in a fiduciary capacity required a fiduciary obligation to the creditor, not just a fiduciary duty to the corporation for which the officer worked).
Thus, the issue that the Ellisons raise is whether the Ellisons’ indebtedness to ARC, based on their personal guarantees, is “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” If it is, then under 11 U.S.C. § 523(a)(4), their indebtedness is not dis-chargeable in bankruptcy.
We begin by recognizing that by simply guaranteeing Sovereign Travel’s debt to ARC, the Ellisons did not place themselves in a fiduciary relationship with ARC. See, e.g., In re Levitan, 46 B.R. 380, 386-87 (Bankr.E.D.N.Y.1985) (holding that an ordinary security agreement did not create a fiduciary relationship between debtor and creditor). But in this case, there are three additional facts that we must consider.
First, Sovereign Travels’s indebtedness to ARC arose out of the breach of a fiduciary relationship between the two corporations. Under the Agent Reporting Agreement, Sovereign Travel was obliged to collect payments for the sale of tickets and place those payments in a trust ac *271 count with Whitesville State Bank for the benefit of ARC and subject only to ARC’s withdrawals. The Agent Reporting Agreement provided that these proceeds, less commissions due to Sovereign Travel, were the “property of the carriers,” to be “held in trust” by Sovereign Travel “until satisfactorily accounted for to the carriers.” Because Sovereign Travel failed to place ticket-sales proceeds into the trust account and failed to report to ARC the sales that generated these proceeds, Sovereign Travel breached the trust arrangement and therefore defalcated “while acting in a fiduciary capacity” with respect to these funds. See In re Ansari, 113 F.3d 17, 20-21 (4th Cir.1997); see also In re Uwimana, 274 F.3d 806, 811 (4th Cir.2001) (stating that even negligence or an innocent mistake could constitute a defalcation under § 523(a)(4)).
Second, the Ellisons, when acting as officers and directors of Sovereign Travel, “occupied a fiduciary relationship toward [Sovereign Travel]” under West Virginia law. See Bailey v. Vaughan, 178 W.Va. 371, 359 S.E.2d 599, 605 (1987) (internal quotation marks and citation omitted).
Third, the Ellisons were personally responsible for the conduct that gave rise to Sovereign Travel’s defalcation to ARC. They personally handled Sovereign Travel’s weekly sales reports and ARC’s trust account at the Whitesville State Bank. And they withheld money that was designated to be placed in trust for ARC, causing Sovereign Travel’s default. Thus, it was the Ellisons themselves who depleted ARC’s trust funds to the point that checks properly drawn on the trust account were returned for insufficient funds. In short, the Ellisons’ personal conduct brought about Sovereign Travel’s defalcation to ARC. And while an officer of a corporation is in no way personally liable for corporate torts solely on account of his corporate position, where the officer actually participates in or otherwise sanctions the tortious acts, personal liability may lie. See Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 188 W.Va. 468, 425 S.E.2d 144, 149 (1992).
Thus, in this case, not only did the Ellisons guarantee Sovereign Travel’s indebtedness and performance to ARC, they also created that very indebtedness through their personal conduct by singlehandedly causing the corporation to breach its trust arrangement with ARC. In doing so, they also breached their fiduciary duty to the corporation as officers and directors, and their tortious conduct made them jointly and severally liable with the corporation vis-a-vis ARC, quite apart from their personal guarantees.
Based on the confluence of: (1) the Elli-sons’ personal guarantees to ARC of Sovereign Travel’s indebtedness; (2) the fact that Sovereign Travel’s indebtedness arose from Sovereign Travel’s breach of its fiduciary duty to ARC; (3) the fact that Sovereign Travel’s breach of a fiduciary duty was brought about by the Ellisons’ personal conduct; and (4) the fact that the Elli-sons’ conduct amounted to a breach of their fiduciary duty to Sovereign Travel, we conclude that the Ellisons’ indebtedness to ARC under the personal guarantees was from their defalcation while acting in a fiduciary capacity and therefore is not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(4). In so holding, we recognize that the class of nondischargeable debts is indeed quite narrow, see, e.g., In re Miller, 156 F.3d 598, 602 (5th Cir.1998), but we also avoid a construction so narrow as to eviscerate § 523(a)’s purpose of preventing debtors such as the Ellisons, from avoiding, through bankruptcy, the consequences of their wrongful conduct. See, e.g., In re Magpusao, 265 B.R. 492, 496 *272 (Bankr.M.D.Fla.2001) (“Exceptions to discharge prevent a debtor from avoiding the consequences of wrongful conduct by filing a bankruptcy case”); In re Chapman, 228 B.R. 899, 908 n. 7 (Bankr.N.D.Ohio 1998) (stating that § 523(a) exceptions to discharge “are designed to prevent the debtor from avoiding, through a bankruptcy filing, the consequences of wrongful conduct”); In re Portner, 109 B.R. 977, 985 (Bankr.D.Colo.1989) (noting the need to balance “the fresh start policy [with] preventing a dishonest debtor from avoiding through bankruptcy the consequences of wrongful ... conduct”); In re Wheeler, 101 B.R. 39, 47 (Bankr.N.D.Ind.1989) (same); In re Mayo, 94 B.R. 315, 322-23 (Bankr.D.Vt.1988) (same); In re Levitan, 46 B.R. at 383 (“Many of the exceptions [to discharge] are intended to prevent a debtor from avoiding through bankruptcy the consequences of his wrongful conduct”).
Stated otherwise, the Ellisons, through their wrongful conduct, brought about the very indebtedness which they now seek to discharge. They controlled — -through a willingness to breach their fiduciary duty to Sovereign Travel — Sovereign Travel’s ability to satisfy its fiduciary duty to ARC. Combined with the Ellisons’ personal guarantees, this control makes separating the Ellisons from Sovereign Travel’s defalcation while acting in a fiduciary capacity impossible. Accordingly, we agree with the district court that the Ellisons’ indebtedness to ARC was caused solely by the Ellisons’ breach of trust and is therefore not dischargeable under 11 U.S.C. § 523(a)(4). Cf. In re Folliard, 10 B.R. 875, 876 (D.Md.1981) (“An officer of a corporation ‘who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of trust committed by the corporation’ ” (citation omitted)).
Ill
The Ellisons also contend that the district court erred in calculating the amount owed to ARC under their personal guarantees. They maintain that the district court based the reimbursement amount on standard commercial fares when many of the airline tickets were actually sold at lower tour rates. The bankruptcy court based its use of the higher rates on the fact that Sovereign Travel- — through the Ellisons— failed to report its sales in a timely manner, thereby forfeiting the right to use the lower tour rates actually collected from the customers. The Ellisons argue that use of the higher rates by the court is not justified by the contractual relationship and thus constitutes a penalty, not damages.
At the December 6, 1999 hearing on damages, the Ellisons offered into evidence several contracts setting the tour rates owed to the airlines for tickets sold by Sovereign Travel. The agreed-upon tour rates were substantially lower than the usual commercial coach rates that were charged by the carriers to independent third-party ticket purchasers. ARC objected to this evidence because it had not been produced in advance of the hearing and asserted on the merits that, by failing to remit the money owed to the carriers promptly, Sovereign Travel was not entitled to the benefit of the contracted prices, even though this position is not supported by the contracts themselves. In response to ARC’S objection, the bankruptcy court noted that there was insufficient time after the summary judgment ruling for Sovereign Travel to produce the documents in advance, and accordingly the court allowed the contracts to be admitted with the following accommodation to ARC:
Instead of just disregarding totally that evidence [the contracts] from the Defendants, what we are going to do is give the Plaintiffs an opportunity to submit, *273 by affidavit. I don’t think the Plaintiffs ought to be put to the expense of coming to another trial and another hearing, and if the Plaintiffs can show to me, by sufficient affidavit, that you don’t get the benefit of a tour agreement, unless you remit the reduced prices promptly, then I think they are entitled to judgment with respect to those matters.
Following the hearing, ARC filed an affidavit, stating that there were no records to support the Ellisons’ contention that they were entitled to the negotiated tour rates “because of passage of time” and due to the Ellisons’ failure to remit money owed to the carriers promptly. The bankruptcy court accepted ARC’s explanation and, despite the lack of such contingencies in the negotiated tour rates, calculated damages based on the higher commercial coach rate. We conclude that this was error.
It is well settled that damages for breach of contract “must be such as will give, and only such as will give, compensation for the actual loss directly flowing from the breach of the contract.” Horn v. Bowen, 136 W.Va. 465, 67 S.E.2d 737, 739 (1951) (internal quotation marks and citation omitted). Contract damages must reflect what the injured party would have received had the contract been performed; they cannot be punitive. Id. And, as long as a contract is not ambiguous, extrinsic evidence cannot supply the terms of the contract. See, e.g., Larew v. Monongahela Power Co., 199 W.Va. 690, 487 S.E.2d 348, 352 (1997); Marshall v. Elmo Greer & Sons, Inc., 193 W.Va. 427, 456 S.E.2d 554, 557 (1995).
Applying these well-settled principles to this case, the Ellisons’ debt to ARC should have been calculated based on the contract price negotiated between the Ellisons and the airlines. Had the Ellisons met their responsibility of holding the proceeds of air travel sales in trust and submitting sales reports, ARC would have been entitled to draw only the negotiated tour rates from the trust account. And because the contracts clearly did not make the negotiated tour rates contingent on payment by a certain date, the bankruptcy court erred by relying on ARC’s affidavits to discredit those rates. At bottom, if the tour rates were those actually applicable, the calculation based on standard commercial rates amounted to a penalty, in violation of well-accepted contract principles.
Notwithstanding this error, ARC argues that the contracts for tour rates produced by the Ellisons were never executed and therefore were invalid. But this issue has never been addressed by the bankruptcy court. Because we believe that the contracts’ validity should be decided in the first instance by the bankruptcy court, we will remand the damages issue for further factual findings by the bankruptcy court. To the extent that it might be established that there were no valid contracts for tour rates or reduced fares, we would agree that the standard commercial rates applicable at the time of the Ellisons’ defalcation would be the appropriate measure for the Ellisons’ debt.
Accordingly, we vacate the award of damages and remand that issue for further factfinding.
IV
In sum, we affirm the bankruptcy court’s ruling that, under 11 U.S.C. § 523(a)(4), the Ellisons’ indebtedness to ARC based on their personal guarantees to ARC of Sovereign Travel’s indebtedness is a nondischargeable debt. And on the issue of damages, we vacate the award and *274 remand for further factfinding.[2]

AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

. The actual debtor in that proceeding is Great American Holding Company which succeeded to the assets and obligations of Sovereign Travel.

. On the Ellisons' contention that the bankruptcy court abused its discretion in denying them leave to implead the trustee in the bankruptcy of Sovereign Travel (now Great American Holding Company), we conclude that the court did not abuse its discretion.