**In the Matter of Timothy F. HOOVER, Debtor.**

**Bankers Trust Company, N.A., Plaintiff,**

**v.**

**Timothy F. Hoover, Defendant.**

**Bankruptcy No. 01–01322 CJ. Adversary No. 01–20084.**

United States Bankruptcy Court, S.D. Iowa.

Jan. 15, 2003.

Michael L. Jankins, Des Moines, IA, for Debtor.

Anita L. Shodeen, Des Moines, IA, Chapter 7 Trustee.

August B. Landis, Thomas H. Burke, Des Moines, IA, for Plaintiff.

## MEMORANDUM OF DECISION

LEE M. JACKWIG, Bankruptcy Judge.

Judgment Creditor Bankers Trust Company, N.A. ("Plaintiff" or "BTC") filed a complaint against Chapter 7 Debtor Timothy F. Hoover ("Defendant" or "Hoover"). Plaintiff asks the Court to find its state court judgment against Defendant in the amount of $115,666.26 nondischargeable pursuant to 11 U.S.C. section 523(a)(2)(A), section 523(a)(4) and section 523(a)(11).

At the outset of the trial on August 22, 2002, the Court stated its ruling denying Plaintiff's pending motion for summary judgment. Then, at the close of Plaintiff's case-in-chief on the same date, Defendant moved for a directed verdict dismissing this adversary proceeding. Having carefully reviewed the record and the written and oral arguments of the parties, the Court now sets forth its ruling on that motion.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(I).

## DISCUSSION

In the August 22, 2002 Stipulated Pretrial Order, the parties set forth the following background facts as being true and undisputed:

1. Defendant Timothy Francis Hoover ("Hoover") filed his Petition for relief in bankruptcy with this Court pursuant to 11 U.S.C. Chapter 7 on March 23, 2001.

. . . .

7. BTC is a federally chartered banking corporation authorized to conduct business in the State of Iowa; has at all relevant times conducted business through branches located in Des Moines, Polk County, Iowa; and is a creditor and party in interest in Hoover's bankruptcy.

8. Hoover is the father of Kendra A. Hoover n/k/a Kendra Von Gruenigen (hereinafter "Kendra").

9. On or about March 8, 1982, Kendra was departing a stopped school bus pointed in a northerly direction on U.S. Highway 169 near Otho, Webster County, Iowa, when she was struck by an automobile owned by the State of Iowa,

and operated by Wayne Pelkey, an employee of the State of Iowa ("Pelkey").

10. When Kendra was struck by the automobile as described in the preceding paragraph, she was a minor.

11. As a result of being struck by the automobile as described in Paragraph 9, Kendra suffered a variety of personal injuries.

12. On September 13, 1983, Hoover and his wife, Ginger Hoover, commenced a lawsuit seeking to recover damages from Pelkey and the State of Iowa as a result of the events described in Paragraph 9 of this Complaint. The lawsuit was filed in the Iowa District Court for Webster County, styled *Timothy Hoover and Ginger Hoover, Individually and as Parents and Next Friends of Kendra Hoover, a Minor, Plaintiffs, v. Wayne Pelkey and the State of Iowa, Defendants*, Webster County Law No. 51035 (the "Lawsuit").

13. On June 26, 1987, the parties to the Lawsuit reached a settlement whereby the State of Iowa agreed to pay the sum of $750,000.00 in satisfaction of the claims made in the Lawsuit.

14. On June 26, 1987, the settlement of the Lawsuit as described in the preceding paragraph was approved by order of the Iowa District Court for Webster County.

15. Pursuant to the Webster County District Court's order approving the settlement, $630,000.00 was to be placed into a conservatorship for Kendra's benefit (the "Settlement Sum"), with the balance of $120,000.00 paid to Hoover and his wife as compensation for loss of consortium and for their care and treatment of Kendra following the accident.

16. Hoover and his wife commenced a conservatorship proceeding for Kendra's benefit in the Iowa District Court for Webster County, styled *In the Matter of the Conservatorship of Kendra Hoover*, Webster County Probate No. 22724 (the "Webster County Conservatorship").

17. The Settlement Sum was among the assets that were the subject of the Webster County Conservatorship estate.

18. Hoover and his wife were appointed Co–Conservators for Kendra in the Webster County Conservatorship.

19. In 1987, a change of venue with respect to the Webster County Conservatorship was requested by Hoover and his wife, as the Hoover family had moved to Clarke County.

20. In order to accomplish the change of venue of the Webster County Conservatorship from Webster County to Clarke County, Hoover and his wife commenced a conservatorship proceeding for Kendra's benefit in the Iowa District Court for Clarke County, styled *In the Conservatorship of Kendra Hoover, a Minor, Timothy Hoover and Ginger Hoover, Co–Conservators*, Clarke County Probate No. 7993 (the "Clarke County Conservatorship").

21. Hoover and his wife were appointed Co–Conservators in the Clarke County Conservatorship by Order of the Clarke County District Court dated and filed November 9, 1987, and letters of appointment were issued to Hoover and his wife on January 8, 1988.

22. Subsequent to the change of venue, the assets that were originally the subject matter of the Webster County Conservatorship (inclusive of the Settlement Sum) became the subject of the Clarke County Conservatorship.

23. During the pendency of the Webster County and Clarke County Conservatorships, a portion of the Settlement Sum was invested [in] a Bankers Trust Non–Negotiable Certificate of Deposit

in the face amount of $98,313.87 (the "Bankers Trust CD").

24. On May 21, 1990, after Kendra had attained the age of majority, an Order Approving Final Report and Accounting was entered in the Clarke County Conservatorship, approving a Final Report and Accounting submitted to the Court by Hoover and his wife as Co–Conservators. A true and accurate copy of said Order is attached hereto as Exhibit "1" and is incorporated herein by this reference.

25. On June 4, 1990, Hoover and his wife caused a Supplemental Report of Co–Conservators to be filed in the Clarke County Conservatorship, representing to the Court that the Bankers Trust CD had been transferred by Hoover and his wife as Co–Conservators "to Kendra Hoover, individually . . ." A true and accurate copy of said Supplemental Report of Co–Conservators is attached hereto as Exhibit "2" and is incorporated herein by this reference.

26. When the Supplemental Report of Co–Conservators was filed, Hoover and his wife had not, in fact, transferred the Bankers Trust CD to Kendra.

27. On or about August 16, 1990, Hoover presented the Bankers Trust CD for payment, and obtained Bankers Trust Cashier's Check No 74690 in the amount of $98,313.87 in exchange. A true and accurate copy of Bankers Trust Check No 74690 is attached hereto as Exhibit "3" and is incorporated herein by this reference.

28. Following a jury trial, Kendra obtained a judgment against BTC in the principal amount of $115,666.26 together with interest thereon and related court costs in a case styled *Kendra A. Von Gruenigen f/k/a Kendra A. Hoover,*

*Plaintiff v. Bankers Trust Company, Defendant / Bankers Trust Company, Third–Party Plaintiff v. Timothy F. Hoover, Third–Party Defendant,* Polk County Law No. CL 000–61674 (the "Polk County Lawsuit"). BTC, in turn, obtained a judgment for indemnification against Hoover in the same amount. A true and accurate copy of the Judgment Entry in the Polk County Lawsuit is attached to the Complaint as Exhibit "4."

29. No appeal was taken from the Judgment Entry in the Polk County Lawsuit, and said Judgment Entry is therefore a final judgment entered in a court of the State of Iowa.

30. BTC remained a depository institution as of the date of the filing of the Complaint.[1]

(Stipulated Pretrial Order at 2–4.) The record before the Court also includes: Plaintiff's Exhibits 1 through 9; the testimony of Mr. Paul Erickson, Senior Vice–President of Plaintiff's Consumer Division; and the testimony of the Defendant.

On direct examination, Mr. Erickson testified that the Plaintiff paid Kendra a total of $138,702.89 as a result of the Judgment Entry in the Polk County Lawsuit (Exhibit 2 at 20). As for the transaction in issue, Mr. Erickson stated he had no personal knowledge about what transpired when Defendant presented the Bankers Trust CD for payment. Referring to Cashier's Check No. 74690 (Exhibit 2 at 19), he observed that it was made payable to "Timothy Hoover or Kendra Hoover." He noted that the check could have been made payable to "Timothy Hoover, as Kendra's Conservator" or to "Timothy Hoover and Kendra Hoover."

On cross-examination, Mr. Erickson agreed that the Plaintiff has a large and

---

1. Plaintiff filed its Complaint on July 10, 2001.

experienced trust department. He affirmed that Kendra's account would have been set up as a conservatorship account according to the letters of appointment on file. He did not dispute that the Bankers Trust CD would have borne similar information, meaning the Defendant and his wife would have appeared as conservators. Given the Plaintiff would not have known about the Order Approving Final Report and Accounting (Exhibit 2 at 10–11) or the Supplemental Report of Co–Conservators (Exhibit 2 at 12–18), he admitted the bank officer who issued Cashier's Check No. 74690 to "Timothy Hoover or Kendra Hoover" did so in error.

On redirect examination, Mr. Erickson emphasized that the Plaintiff must rely on a conservator to apprise it of the status of a particular conservatorship. Accordingly, he maintained that the bank officer had no way of knowing the conservatorship had already terminated when she issued Cashier's Check No. 74690 on August 16, 1990.

Upon questioning by the Plaintiff's attorney, Defendant testified that the $630,000.00 settlement sum, that constituted the conservatorship for Kendra's benefit, had been divided up into certificates of deposit at several banks to avoid exceeding insured limits. He acknowledged the assets of the conservatorship were for Kendra's benefit and not for the benefit of him or his wife. With respect to the Bankers Trust CD, Defendant explained that sometime during the conservatorship he cashed out one of the certificates of deposit that had been issued by a California bank that was running into financial problems. He then used that amount to obtain the Bankers Trust CD. Defendant agreed that he would have provided the Plaintiff's representative with documentation to establish the account in the name of the conservatorship and that the certificate itself would have reflected it was restricted for Kendra's benefit. He indicated the Bankers Trust CD was kept in a safe deposit box, to which Kendra had the key and for which she was a signatory.

With respect to the transaction in question, Defendant testified that he neither provided the Plaintiff's representative with copies of the Order Approving Final Report and Accounting and the Supplemental Report of Co–Conservators nor otherwise contacted the Plaintiff with that information. He explained that neither his attorney nor the attorney for the conservatorship had advised him to do more than sign the Supplemental Report and let Kendra know. Defendant understood that both his obligation to distribute the conservatorship assets to Kendra and his formal role as a conservator had ended. He reported, however, that Kendra told him to handle the disposition of the Bankers Trust CD. Consistent with his answer to Interrogatory No. 11 (Exhibit 9 at 2),[2] Defendant stated he put the proceeds of Cashier's Check No. 74690 into various accounts with A.G. Edwards and subsequently withdrew funds from those accounts to purchase livestock, land and equipment. He did not dispute that at some point Kendra took issue with his handling of her affairs and commenced legal action. He admitted he ended up

---

2. In response to Interrogatory No. 11 that asked him to identify the factual basis for his denial of paragraph 28 of the Complaint, Defendant stated:

The proceeds of the Bankers Trust CD were placed in an account at A.G. Edwards that would have also had Kendra's name on the account. Kendra wanted to be involved in the farming operation, and some of her money went towards farm purchases including the downpayment on the farm where she subsequently resided. She has since sold that land on contract. (Exhibit 9 at 2.)

turning over the farming assets to her in the mid 1990's.

Upon questioning by his own attorney, Defendant testified that he was a high school graduate with five years of education in trade school. Over the years he has been employed full time as a plumber but also has engaged in farming. His prior experience with the law and lawyers was limited to Kendra's personal injury lawsuit and the subsequent conservatorship. He reiterated that his role in the termination of the conservatorship was limited to signing the paperwork that was prepared by the attorneys in the matter. As for the Receipt of Distributee (Exhibit 2 at 15–16), it was his understanding Kendra's guardian ad litem prepared that document and Kendra signed it at that attorney's office. Defendant stated he had nothing to do with her signing the receipt and he was not present when she did sign the document.

Consistent with his answers to Interrogatories Nos. 5 and 13 (Exhibit 7 at 2; Exhibit 8 at 2),[3] Defendant testified that he waited until August 16, 1990 to present the Bankers Trust CD for payment because that is when it matured. He requested payment because he wanted a better rate of return than what the bank officer was willing to offer. Defendant reported he gave the bank officer no direction regarding the manner in which Cashier's Check No. 74690 was to be written.

As for his subsequent use of funds from the A.G. Edwards accounts, Defendant stated he expanded his farming operation in the hope that Kendra would become part of it. At the time he purchased the 240 acres, Kendra had recently married. She and her husband lived rent-free in the house that was included in the purchase of the land. They even invested time and money in home improvements. Nevertheless, Kendra and her husband ultimately left the farm. Moreover, apparently as a result of the disagreement between Kendra and the Defendant, the farm was sold and the proceeds were turned over to Kendra.

## DISCUSSION

 Federal Rule of Bankruptcy Procedure 7052 makes Federal Rule of Civil Procedure 52 applicable in adversary proceedings. The latter rule states in relevant part:

(c) Judgment on Partial Findings. If during a trial without jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with

---

**3.** In response to Interrogatory No. 5 that questioned his communications with the Plaintiff, Defendant stated: "Only communication I can recall would have been those that occurred during the litigation of the lawsuit. I had communication with a woman at Bankers Trust regarding interest rates on CD's at the time the CD was maturing." (Exhibit 7 at 2.)

Then in response to Interrogatory No. 13 that asked him to identify the factual basis for his denial of any misrepresentations regarding the closing of the Clarke County Conservatorship, Defendant stated:

The defendant does not specifically know the legal ground which lead to the judgment against Bankers Trust. His supplemental report did not cause Bankers Trust to issue the check attached as Exhibit 3 to the complaint. The CD at Bankers Trust was not cashed until August 16, 1998 [sic] because that is when it matured. When the defendant went to Bankers Trust to cash out the CD, he made no misrepresentations to the woman he dealt with at Bankers Trust. The only question she asked the defendant was why he did not keep the certificate there, and he advised that the interest rates were too low.

(Exhibit 8 at 2.)

respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Fed.R.Civ.P. 52(c). Accordingly, for Plaintiff to defeat the Defendant's motion for a directed verdict dismissing this adversary proceeding, the record as of the close of the Plaintiff's case-in-chief must establish a prima facie case under at least one of the dischargeability sections upon which the Plaintiff's Complaint is based.[4]

### 11 U.S.C. section 523(a)(2)(A)

■ Count I of the complaint is based on 11 U.S.C. section 523(a)(2)(A) that provides:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

4. With respect to each of the Code sections in issue, Plaintiff argued that the various elements of these sections are established by virtue of the outcome of the Iowa lawsuit mentioned in paragraph 28 of the Stipulated Pretrial Order. Collateral estoppel (issue preclusion) does apply in proceedings brought under 11 U.S.C. section 523(a). *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this case, this Court must follow the Iowa law of collateral estoppel. *See Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989 (8th Cir.1999). That law provides that collateral estoppel will apply if "(1) there is an identity of issues in the current and prior actions, (2) the issue was raised and actually litigated in the prior action, (3) the issue was material and relevant to the disposition of the prior action, and (4) the determination was necessary and essential to the prior judgment." *Id.* (citing *Dolan v. State Farm Fire & Cas. Co.*, 573 N.W.2d 254, 256 (Iowa 1998)).

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To prevail on a nondischargeability action brought pursuant to this section in the Eighth Circuit, the creditor must prove all of the following:

(1) that the debtor made a representation that was false;

(2) that the debtor realized the representation was false when it was made;

(3) that the debtor planned on the false representation misleading the creditor;

(4) that the creditor justifiably relied on the false representation; and

(5) that the creditor suffered a loss as a proximate result of that representation.

*See Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987)

With perhaps two exceptions—that Hoover made a representation that was false and that Plaintiff did not justifiably rely on that representation, the record before the Court does not warrant application of collateral estoppel. Kendra's petition against Plaintiff included one count based on negligence and one count based on breach of contract. Plaintiff's cross petition against Kendra's parents was based on breach of warranty and contribution. The underlying allegations are not couched in terms sufficiently similar to the various issues before this Court to enable this Court to find the required "identity of issues." Moreover, the jury verdict form is limited. It tells this Court only that the jury found or determined: (1) Plaintiff did breach a contract with Kendra; (2) the amount of damages consisted of $98,313.87 principal and $17,352.39 interest; (3) Plaintiff proved it was entitled to reimbursement from Hoover; and (4) the reimbursement amount was $115,666.26. (Exhibit 6 at 1–2.) The judgment entry adds nothing more. (Exhibit 2 at 20.)

(setting forth the five elements but indicating reliance must be reasonable); *In re Ophaug,* 827 F.2d 340 (8th Cir.1987) (holding reliance in fact is enough); and *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (clarifying that reliance must be justifiable—that is, something more than reliance in fact but something less than strict reasonable reliance). The standard of proof is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

 Since direct proof of fraudulent intent is rare, the creditor may present circumstantial evidence to establish the debtor's intent to deceive. *Van Horne,* 823 F.2d at 1287. A debtor's self-serving statement of honest intent will not overcome an inference of fraudulent intent unless the debtor's actions generally support the debtor's assertion of no wrongdoing. *Id.* at 1287–88.

 In Count I, Plaintiff sets forth the following numbered allegations in support of its cause of action under the above quoted section:

32. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is specifically attributable to misrepresentations made by Hoover in connection with the closing of the Clarke County Conservatorship, and specifically to:

 a. His misrepresentation to the Iowa District Court for Clarke County that the Bankers Trust CD had been transferred by Hoover and his wife as Co–Conservators "to Kendra Hoover, individually ..." See Exhibits "2" and "3;" and

 b. His misrepresentation that he had authority, as a Co–Conservator

for the Clarke County Conservatorship, to present the Bankers Trust CD for payment and to receive payment for same.

33. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is a debt for money attributable to Hoover's use of false pretenses, false representations and actual fraud. (Exhibit 2 at 6.)

### I. The Representation

Insofar as the Defendant and his wife had not transferred every asset of the conservatorship to "Kendra Hoover, individually," as of June 4, 1990, one could read the Supplemental Report of Co–Conservators to be a representation that was false. The representation, however, was one made to the state court. The Defendant made no such representation to the Plaintiff.[5]

Insofar as the Defendant presented the Bankers Trust CD for payment on August 16, 1990 without clarifying the status of the conservatorship, one technically could equate that omission with a representation that was false. For the sake of analysis under section 523(a)(2)(A), this Court will so hold.

### II. The Realization

Defendant was a credible witness. He acknowledged without hesitation that he did not provide Plaintiff's representative with information about the status of the conservatorship. His explanation regarding why he failed to do so is entirely plausible. He simply was not aware that he needed to say anything about the matter. Nothing in the record indicates he was told otherwise. The Court will not

---

5. At least in passing it should be noted that Plaintiff's cross petition in the Iowa lawsuit mentions the May 21, 1990 Final Report and Accounting but it does not mention the Supplemental Report. (Exhibit 5 at 2–3.)

assume Defendant would have lied had the bank officer inquired about the status of the conservatorship. He did not suggest, direct or control the manner in which the bank officer prepared the check.

## III. The Intent

Defendant presented the Bankers Trust CD for payment on August 16, 1990 because the certificate of deposit had matured and he sought a better rate of return than that offered by the Plaintiff's representative. He followed through by depositing the check into accounts with A.G. Edwards. At some unknown point thereafter he made withdrawals to purchase livestock, land and equipment.

Defendant said he cashed the Bankers Trust CD and reinvested the funds with Kendra's knowledge and consent. As stated before, the Court found him to be a credible witness. Plaintiff did not call Kendra as a witness. The Court will not speculate whether Kendra's testimony would have been consistent with the allegations she set forth in her petition in state court. (Exhibit 3 at 2–3 and 7–8.) As for the subsequent dispute over the withdrawal of the funds from the A.G. Edwards accounts and the use of those funds to expand the farming operation, the record is incomplete. Apparently Kendra commenced a lawsuit against her mother and father to obtain "necessary information" (Exhibit 3 at 5), but what she alleged in that action is unknown because the complaint from that particular lawsuit is not in evidence.[6]

In sum, the record before the Court does not support finding that Defendant planned on the omission misleading the Plaintiff. It does support finding that his intent on August 16, 1990 was to obtain a better rate of return for Kendra's money. Whether he later decided to use her money inappropriately and without her actual or implied consent is of no moment to Defendant's state of mind at or leading up to the transaction in issue in this proceeding.

## IV. The Reliance

The Plaintiff did not rely on the representations made in the Supplemental Report of Co–Conservators filed in the state court. The Plaintiff was unaware of the existence of that report. Rather, according to Mr. Erickson's testimony, the Plaintiff relied in fact on Defendant's omission.

Plaintiff did not call as a witness the experienced bank officer who handled the transaction. The record is limited to Mr. Erickson's portrayal of Plaintiff's customary procedure. Specifically, he stated it was not the bank's practice to make specific inquiry about the status of a conservatorship at the time of a transaction. The Court finds that somewhat amazing protocol, especially when a conservatorship account is being closed out. The jury in Kendra's lawsuit against the Plaintiff may have shared that impression since it found the Plaintiff did breach a contract with

---

6. During the last round of questioning, Plaintiff for the first time asked Defendant to verify that the state court found he had used conservatorship assets to purchase assets of his own. He agreed. When this Court asked for a clarification about when this occurred, the answer was that happened while the Clarke County Conservatorship was pending. The response could mean the state court judge who presided over the conservatorship made such a finding at some point in time between the change of venue in 1987 and the termination of the conservatorship in 1990. No exhibits clarify the particulars. The response could also mean the state court judge who presided over Kendra's action against her parents made such a finding about what occurred during the conservatorship. Once again, no exhibits assist the Court in weighing this alternative interpretation.

Kendra. (Exhibit 6 at 1.) One of the underlying allegations in Kendra's amended petition was that the Plaintiff violated ordinary and reasonable commercial standards in handling the transaction in issue. (Exhibit 4 at 2.) [7] Accordingly, the Court finds that the Plaintiff's reliance may have been actual but it was not justifiable.

## V. The Result

Though the Plaintiff's representative may have relied on the omission, she did not issue the check in a manner consistent with the existence of a conservatorship. Mr. Erickson acknowledged the error. Plaintiff's loss is the proximate result of the error, not of the omission.

### 11 U.S.C. section 523(a)(4)

Count II of the complaint is based on the italicized portion of 11 U.S.C. section 523(a)(4) that reads:

(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—

(4) for *fraud or defalcation while acting in a fiduciary capacity,* embezzlement, or larceny;

11 U.S.C. § 523(a)(4) (emphasis added).

## I. Fraud or Defalcation While Acting in a Fiduciary Capacity.

Whether a relationship can be characterized as "fiduciary" for the purpose of section 523(a)(4) is a question of federal law. *See Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir.1997). The fiduciary capacity must arise from an express trust or technical trust, not from a constructive trust or mere contractual relationship. *See id.; Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993). The express or technical trust must exist before and without reference to the alleged wrongdoing. *See Cochrane,* 124 F.3d at 984. A court should look to the substance of a transaction rather than to any labels assigned by the parties. *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 878–79 (8th Cir.1985).

In Count II, Plaintiff sets forth the following allegations in support of its cause of action under section 523(a)(4):

36. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is specifically attributable to Hoover's misuse of his actual and/or apparent authority as a Co–Conservator in connection with the Clark County Conservatorship.

37. When Hoover:

a. Represented to the Clark County District Court that the Bankers Trust CD had been transferred by Hoover and his wife as Co–Conservators "to Kendra Hoover, individually . . ." (Exhibit "2"); and thereafter

b. Presented the Bankers Trust CD for payment and obtained the proceeds therefrom, and thereafter

---

**7.** The United States Supreme Court discussed the circumstantial nature of the justifiable reliance standard in *Field v. Mans* as follows:

As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.

*Field v. Mans,* 516 U.S. at 76, 116 S.Ct. 437. *See also, In re Kirsh,* 973 F.2d 1454, 1461 (9th Cir.1992)(noting relevance of a creditor's knowledge of the standard practices in a particular industry in determining whether reliance is justifiable).

c. Converted the proceeds from the Bankers Trust CD to his own use. Hoover was *purportedly acting in a fiduciary capacity.*

38. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is a debt for fraud or defalcation while Hoover *claimed to be acting in a fiduciary capacity.*

Exhibit 2 at 7 (emphasis added).

Notwithstanding the italicized terminology used in Count II and the argument presented under Count I, the Plaintiff asks the Court to find that Defendant was acting in a fiduciary capacity toward Kendra at the time of the transaction in issue.[8] Defendant concedes that point. Defendant, however, disputes there was any fiduciary relationship between him and the Plaintiff at any time. He contends section 523(a)(4) requires such a relationship. Relying on *In re Wilson,* 127 B.R. 440 (Bankr.E.D.Mo.1991) and *In re Kondora,* 194 B.R. 202 (Bankr.N.D.Iowa 1996), Plaintiff counters that the section does not contemplate that a named defendant must have been acting in a fiduciary capacity to a named plaintiff in a particular adversary proceeding.

In the *Wilson* case, the parties stipulated that the debtor was acting in a fiduciary capacity in his role as a guardian and conservator of his grandmother's estate. The trial court observed that was an accurate assessment under Missouri law. *Wilson,* 127 B.R. at 443. That court did not discuss the lack of a fiduciary relationship between the debtor and the judgment creditor—debtor's surety at the time of the transactions in question. The fighting issue focused instead on the debtor's conduct that the court ultimately equated with defalcation. In short, the issue before this Court was not an issue before the *Wilson* court.

As for the *Kondora* case, whether the debtor was acting in a fiduciary capacity as the personal representative of her brother's estate was in issue. The case, however, does not support the Plaintiff's argument. That is, the trial court found that the debtor was a fiduciary under controlling state law and owed fiduciary duties to creditors as well as to beneficiaries of the estate. *Kondora,* 194 B.R. at 208. Regarding the debtor's specific relationship to the judgment creditors who were her half-siblings, that court observed: "Debtor, as personal representative of Norman's estate, owed a fiduciary duty to Plaintiffs to protect their interests as beneficiaries of the estate." *Id.* The *Kondora* court then proceeded to find that debtor's failure to take her half-siblings interests into account in administering her brother's estate constituted defalcation. *Id.* at 209.

As this Court noted at the outset of the trial in this adversary proceeding, the United States Court of Appeals for the Fourth Circuit recently issued a decision that might lend support to the Plaintiff's argument. In the case of *In re Ellison,* 296 F.3d 266, 270 (4th Cir.2002), the majority acknowledged that the debtors did not owe a fiduciary duty to the creditor, a corporation that was owned by various airline carriers and that acted as the carriers' agent in issuing tickets and collecting payment from travel agents, as a result of the debtors guaranteeing their travel agency's indebtedness to that creditor. Nevertheless, the majority held the debtors' personal guarantees were nondischargeable under the defalcation prong of section

---

**8.** One of the difficulties this Court has faced in trying to track Plaintiff's various theories is that the Plaintiff argues both that Defendant did not have the authority to act as if the Supplemental Report of Co–Conservators had not been filed but that he should be considered to have been acting in a fiduciary capacity.

523(a)(4) because of three additional facts: (1) the debtors' travel agency owed the creditor a fiduciary duty as a result of written trust agreements between the agency and the creditor; (2) the debtors owed a fiduciary duty to their travel agency because they were the officers and directors of that entity; and (3) the debtors' actions resulted in the travel agency's defalcation to the creditor. *Id.* at 270–71.

Though some might read the *Ellison* holding as being confined to the specific facts of the case, others might conclude the majority's analysis supports any creditor's action based on defalcation as long as a debtor owed a fiduciary duty to some entity at the time of the transaction in issue. The dissent summed up the ramification of the majority's analysis as follows: "The majority's construction of section 523(a)(4) could exempt all of a fiduciary's debts from discharge in bankruptcy, even those debts incurred entirely apart from his duties as a trustee." *Id.* at 276. Finding that construction "indefensible," the dissent reasoned that "[t]he alternative (and only sensible) construction of the nondischargeability provision would require that the debtor have 'act[ed] in a fiduciary capacity' *with respect to the creditor.*" *Id.* (alteration in the original). *Accord Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 701 (Bankr.N.D.Ill.2002) ("[a] threshold inquiry is whether a fiduciary obligation runs from the Debtor to the Creditor under the facts of this matter").

 This Court is not aware of any decision by the United States Court of Appeals for the Eighth Circuit that addresses the specific issue under consideration.[9] This Court is not bound by decisions from the United States Court of Appeals for the Fourth Circuit. Accordingly, this Court respectfully declines to apply the holding in *Ellison* to the facts of this case. Rather, finding the reasoning of the dissent in *Ellison* to be logically valid and compelling, this Court concludes Defendant's debt must have been incurred while Defendant was acting in a fiduciary capacity with respect to the Plaintiff for the debt in issue to be nondischargeable under the defalcation prong of section 523(a)(4). The record does not support such a finding.[10]

9. The quote "[d]efalcation is defined as the 'misappropriation of trust funds or money held in *any* fiduciary capacity; [the] failure to properly account for such funds'" from *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir.1996) (emphasis added) does appear in *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997). Turning to the *Lewis* case, one discovers the quote within the quote comes from "*Black's Law Dictionary* 417 (6th ed.1990)." *Lewis*, 97 F.3d at 1186. The *Lewis* decision was simply pointing out that the word "defalcation" in a bankruptcy context may include innocent defaults so as to include all fiduciaries. The *Cochrane* decision was making a similar point. In the *Lewis* case, business partners were in a fiduciary relationship with regard to one another; in the *Cochrane* case the attorney was in a fiduciary relationship with his clients. Accordingly, this Court does not equate the reference to "any fiduciary capacity" with a holding that 11 U.S.C. sec-

tion 523(a)(4) excepts from discharge a debt owed to one creditor when a debtor's defalcation occurred while acting in a fiduciary capacity to another entity.

10. At the time of trial, the Court understood Plaintiff's attorney to acknowledge that Hoover was not acting in a fiduciary relationship with the Plaintiff for the purpose of 11 U.S.C. section 523(a)(4). It should be noted that Plaintiff took the opposite position in writing. (Plaintiff's Brief in Support of its Reply to Defendant's Resistance to Motion for Summary Judgment at 4–6.) The reply brief basically relied on the Plaintiff's original brief in support of its motion for summary judgment—specifically the portion discussing Hoover being Plaintiff's fiduciary for the purpose of establishing nondischargeability under 11 U.S.C. section 523(a)(11). (Plaintiff's Brief in Support of its Motion for Summary Judgment at 15–17.) This Court reviewed

## II. Embezzlement.

As used in section 523(a)(4), the term "embezzlement" means "the 'fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988) (quoting *In re Schultz*, 46 B.R. 880, 889 (Bankr.D.Nev.1985)). A creditor must establish "that the debtor improperly used the creditor's property before complying with some obligation to the creditor." *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993). A creditor must prove "that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *E.W. Wylie Corp. v. Montgomery (In re Montgomery)*, 236 B.R. 914, 923 (Bankr.D.N.D.1999) (citing *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir.1996)). *See also Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 509–510 (Bankr.N.D.Ill.2002) (by definition, creditor first must show that property allegedly embezzled was property of the creditor); *Sullivan v. Clayton (In re Clayton)*, 198 B.R. 878, 885 (Bankr.E.D.Pa. 1996) (creditor required to prove debtor fraudulently appropriated creditor's funds, as opposed to funds of debtor's corporation against which creditor held a judgment); *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 818–819 (Bankr.E.D.N.Y.1996) (creditor must establish that debtor has taken property owned by the creditor or in the possession of the creditor).

It must be noted that Plaintiff did not set forth a specific count based on embezzlement in its complaint. The alternative theory of recovery was first set forth in the brief Plaintiff filed in support of its motion for summary judgment. Plaintiff contended Defendant, who had been entrusted with the Bankers Trust CD as Kendra's co-conservator, used the funds in issue in a manner inconsistent with his duties upon termination of the conservatorship. (Plaintiff's Brief in Support of its Motion for Summary Judgment at 14.) Defendant argued that Banker's Trust Cashier's Check No. 74690 was Kendra's property and therefore he could not have embezzled from the Plaintiff. (Defendant's Brief in Support of His Objection to Motion for Summary Judgment at 7.) Relying on the use of the word "another" in the above quoted language from the *Belfry* decision and downplaying the reference to the term "creditor's property" in the above quoted language from the *Werner* decision, Plaintiff responded that the embezzlement prong of section 523(a)(4) requires "only that the embezzlement played some role in the events that eventually led to the debtor's debt to the adversary complaint plaintiff." (Plaintiff's Brief in Support of its Reply to Defendant's Resistance to Motion for Summary Judgment at 5–6.)

The Plaintiff acknowledges that the specific issue it has raised was not in issue in the *Werner* decision. The same, however, can be said for the *Belfry* decision upon which the Plaintiff relies. Plaintiff admits that the property in issue in the *Werner* case was in fact property of the adversary complaint plaintiff. In the *Belfry* case, the property consisted of funds the plaintiff creditor had provided debtor for restora-

those arguments but did not find them persuasive. No further discussion will be set forth in this decision because Plaintiff's trial attorney abandoned those arguments and instead urged this Court to find section

523(a)(11) does not require a finding that Defendant was acting in a fiduciary capacity with respect to the Plaintiff at the time of the transaction in issue.

tion and delivery of a fully restored BMW. The funds did not belong to a third party. Hence, the Plaintiff's reliance on the *Belfry* decision is misplaced.

This Court concurs with those decisions that have held or implied there is a requirement that the embezzled property belonged to the adversary complaint plaintiff. To hold otherwise would widen the pool of creditors who could utilize the embezzlement prong of section 523(a)(4) beyond that contemplated by Congress.

### 11 U.S.C. section 523(a)(11)

Count III of the complaint is based on 11 U.S.C. section 523(a)(11) that provides:

> (a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
>
> (11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of *fraud or defalcation while acting in a fiduciary capacity* committed with respect to any depository institution or insured credit union;

11 U.S.C. § 523(a)(11) (emphasis added).

 Whether a relationship can be characterized as "fiduciary" for the purpose of section 523(a)(11) is a question of federal law. *Meyer v. Rigdon*, 36 F.3d 1375, 1382 (7th Cir.1994). While section 523(a)(11) prevents the discharge of debts arising from the same substantive conduct as that addressed by section 523(a)(4), the former is narrower in application than the latter because it is limited to acts of fraud or defalcation committed with respect to any depository institution or insured credit union. *Id.* at 1379–80.

In Count III, Plaintiff sets forth the following allegations in support of its cause of action under the above quoted section:

41. No appeal was taken from the Judgment Entry in the Polk County Lawsuit (Exhibit "4"), and said Judgment Entry is therefore a final judgment entered in a court of the State of Iowa.

42. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is a debt for fraud or defalcation while Hoover *claimed to be acting in a fiduciary capacity.*

43. BTC was a depository institution when Hoover:

> a. Represented to the Clark County District Court that the Bankers Trust CD had been transferred by Hoover and his wife as Co–Conservators "to Kendra Hoover, individually . . ." (Exhibit "2"); and thereafter
>
> b. Presented the Bankers Trust CD for payment and obtained the proceeds therefrom, and thereafter
>
> c. Converted the proceeds from the Bankers Trust CD to his own use.

44. BTC remains a depository institution as of the date of the filing of this Complaint.

45. The judgment debt owed by Hoover to BTC arising from the Polk County Lawsuit is a debt provided by a final judgment entered in a court of the State of Iowa arising from Hoover's acts of fraud or defalcation while acting in a fiduciary capacity committed with respect to a depository institution (i.e., BTC).

Exhibit 2 at 8–9 (emphasis added).

Similar to its strategy under the fraud or defalcation prong of section 523(a)(4), Plaintiff asks the Court to find that the Defendant was acting in a fiduciary capaci-

ty toward Kendra at the time of the transaction in issue notwithstanding the italicized terminology used in Count III and the argument presented under Count I. Once again, Defendant concedes the factual point. Relying on *Meyer*, 36 F.3d at 1382, he contends the concept of "acting in a fiduciary capacity" in section 523(a)(11) is inapplicable to the facts of this case because the concept is limited to any director, officer, employee, or controlling stockholder (other than a bank holding company) of, or agent for, an insured depository institution. Plaintiff counters that the statutory phrase "with respect to" is broader than the institution-affiliated definition quoted in the *Meyer* decision. Plaintiff argues the phrase encompasses a fiduciary relationship that played a role in furthering a fraud or defalcation leading to a debtor's debt to a depository institution.

The stated limitation upon which the Defendant relies appears in the *Meyer* decision as a quote taken from 12 U.S.C. section 1813(u) because 11 U.S.C. section 101(33)(a) adopts the banking law definition of an "institution-affiliated party." *Id.* at 1382. The United States Court of Appeals for the Seventh Circuit, however, observed that state law may create a fiduciary status in a bank officer that is cognizable in a bankruptcy proceeding.[11] Ac-

cordingly, applying applicable state law, the appellate court found that the debtor, who was the president and a board member of the depository institution and who owned a controlling interest in it, was acting in a fiduciary capacity with respect to the depository institution and its shareholders. *Id.*

■ This Court need not engage in a similar analysis in this proceeding. First, Plaintiff's counsel at trial acknowledged that Defendant was not acting in a fiduciary relationship with the Plaintiff.[12] Second, the analysis of "fraud or defalcation while acting in a fiduciary capacity" under section 523(a)(4) is the same under section 523(a)(11). That is, a debt held to be dischargeable under section 523(a)(4) because a creditor failed to prove the debtor was acting in a fiduciary capacity with respect to that creditor is dischargeable under section 523(a)(11) on the same ground. The "with respect to" language changes nothing in that regard. As the *Meyer* decision explained, "*any* final judgment, including default judgments, must be given preclusive effect so long as they arise from the debtor's fraud or 'defalcation' while acting in a fiduciary capacity for a financial institution." *Id.* at 1382 (alteration in the original).[13]

---

11. In the context of an 11 U.S.C. section 523(a)(4) action, the United States Court of Appeals for the Eighth Circuit has agreed that "a statute or other state law rule may create fiduciary status in an officer which is cognizable in bankruptcy proceedings." *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878 (8th Cir.1985). The appellate court, however, cautioned against extending that fiduciary duty to third party creditors. *Id.* at 878 n. 3.

12. In written argument in support of its motion for summary judgment, Plaintiff cited Iowa Code sections 633.649 (powers of conservators—same as all fiduciaries) and 633.85 (liability of fiduciary employing agents) and then proceeded to argue that Defendant was

acting as a fiduciary for Plaintiff because Plaintiff was acting as an agent for the Defendant, Plaintiff was found liable for breach of contract with Kendra, and Defendant was found liable to Plaintiff for indemnification with respect to Plaintiff's breach of contract. (Plaintiff's Brief in Support of its Motion for Summary Judgment at 16–17; Plaintiff's Brief in Support of its Reply to Defendant's Resistance to Motion for Summary Judgment at 7.) The Court reviewed those arguments but did not find them persuasive.

13. In holding that section 523(a)(11) altered the common law collateral estoppel rules with respect to default judgments, settlement agreements and certain administrative agency decisions by requiring courts to give such

## CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that Plaintiff has not established a prima facie case under 11 U.S.C. section 523(a)(2)(A), section 523(a)(4) or section 523(a)(11) and, therefore, the Defendant's Rule 52(c) motion must be granted and the adversary proceeding dismissed.

A separate Order shall be entered accordingly.

dispositions preclusive effect, the *Meyer* court relied on the plain language of the statute. *Meyer v. Rigdon,* 36 F.3d 1375, 1380 (7th Cir.1994). The court, however, also noted the legislative history supported its reading of the statute:

> "Before Congress enacted section 523(a)(11), a bank officer could enter into a private settlement agreement with the FDIC, for instance, admit that he had committed acts of fraud, and still have the debt arising form his fraud discharged in bankruptcy. By enacting section 523(a)(11), Congress intended to limit the bankruptcy court's ability to nullify regulatory victories through its independent power to determine dischargeability."

*Id.* at 1380–81.