# Richmond.

## THE EXECUTIVE COMMITTEE OF CHRISTIAN EDUCATION AND MINISTERIAL RELIEF OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES, INC. v. SAMUEL W. SHAVER, EXECUTOR OF J. NEWTON WILSON, DECEASED, ET ALS.

### November 18, 1926.

1. TRUSTS AND TRUSTEES—*Declaration of Trust—Necessity and Sufficiency.*—While it is essential to the creation of a trust that there be an explicit declaration of trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created, no formal, technical, or particular words are necessary, but it is sufficient if an intention to create a trust and the subject matter, purposes, and beneficiary are stated with reasonable certainty. Indeed the use or non-use of the technical words, "trusts" and "trustee," is not controlling although it will be given weight.

2. TRUSTS AND TRUSTEES—*Gift by Way of Declaration of Trust—Delivery of Possession by Maker of Trust.*—In case of a gift by way of declaration of trust, the donor does not part with the possession of the subject of the gift, but retaining it, declares that he holds it in trust for the donee. The donee need not use the words "I declare myself a trustee," but he must do something which is equivalent to it, and use expressions with that meaning.

3. TRUSTS AND TRUSTEES—*Declaration of Trust—Assignments—Donor Must Elect between an Assignment and a Declaration of Trust.*—It sometimes happens that a donor with a gift intent, neither declares himself trustee nor makes an effectual equitable assignment, although his purpose is evidently to assign, and not to create a trust. The donor is legally put to his election whether he will assign or declare a trust, and if he elects the former, as is shown by his attempted assignment, the gift must stand or fall as the donor designated to make it, and if ineffectual as an assignment, it can derive no assistance from the doctrine of declaration of trust.

4. TRUSTS AND TRUSTEES—*Declaration of Trust—Form—Intention.*—There is no prescribed form for a declaration of a trust, whatever evinces the intention of the party that the property of which he is the legal owner shall beneficially be another's is sufficient. The intention must be plainly manifest, and not derived from loose and equivocal

expressions of parties, made at different times and upon different occasions, but any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing.

5. TRUSTS AND TRUSTEES—*Assignment—Declaration of Trust—Case at Bar.*—In the instant case a testator before his death had written a letter to a friend in which he said: "I hereby assign to you" certain notes and directed the friend to collect the notes and pay the same to the executive committee of a ministerial relief fund and concluded with the words: "Please execute this trust for your life-long partner and friend." Testator continued to hold the notes in question to the time of his death and collected the interest, which he applied to his own use, and there was nothing in the evidence to indicate that he intended to deprive himself of the beneficial ownership in the same, or to show that he declared that he held the notes in trust for someone else, or did what was equivalent to such a declaration.

   *Held:* That there was an incomplete assignment which was not completed by the delivery of the notes; and that the notes passed under a general bequest and devise in testator's will of all his property, real and personal, not otherwise disposed of.

6. TRUSTS AND TRUSTEES—*Defective Assignment not to be Treated as a Declaration of Trust—Case at Bar.*—In the instant case, from the evidence, it appeared plain that a testator intended, at one time, to make an assignment which he did not complete. Having elected to make an assignment which failed, the defective assignment cannot be treated as equal to a declaration of trust, and the gift sustained on that theory. There was nothing in the evidence to indicate that there was any declaration by testator except in connection with the attempted assignment and no declaration was made by him at any time that he was not the beneficial owner of the notes in question and that he held same in trust for anyone else.

7. TRUSTS AND TRUSTEES—*Assignments—Declaration of Trust—Case at Bar.*—A letter from a testator to a friend on its face did not contemplate the creation of a trust or the declaration of trusteeship in the donor. The language used was "hereby assign to you the note of the Edinburg Milling Co." Then followed a direction to collect and pay over. The only trust conferred or created by the letter was contained in the concluding sentence: "Please execute this trust for your life-long partner and friend." The trust reposed in the friend and partner was to collect the note, which had been assigned (as the donor thought) to his friend, and to pay it over to the beneficiary.

Appeal from a decree of the Circuit Court of Shenandoah county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Geo. S. Harnsberger* and *J. M. Perry*, for the appellants.

*Geo. N. Conrad* and *F. S. Tavenner*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

The appellant, hereafter referred to as the executive committee, is here complaining of a final decree of the Circuit Court of the county of Shenandoah in which the court held it was not entitled to the proceeds of two certain notes, one for $6,000.00 and one for $3,000.-00, made by the Edinburg Milling Company and by virtue of an alleged trust created by Wilson during his lifetime, but that the $9,000.00 represented by the notes passed under the residuary clause of his will to his grandson Charles N. Wilson.

The pertinent facts involved in the controversy are few and are undisputed. J. Newton Wilson died testate in the county of Shenandoah on February 8, 1924, leaving a considerable landed and personal estate. He had been twice married. By his first wife he had one son Claude H. Wilson, who predeceased him many years, leaving one son Charles N. Wilson. By his second wife he had no children. His will, which bore date September 27, 1922, apparently disposes of all his real and personal estate, for after making certain bequests in the will itself, and appointing Samuel W. Shaver his executor, he added a codicil without date in which he declared: "All property, real and personal, left by me at my death, belongs to Charles Newton Wilson, my grandson, if not otherwise disposed of." We are not concerned with any other

clause of the will than the one just quoted. The $9,000.00 represented by the two notes above referred to were not disposed of in the body of the will, and the question for consideration here is, whether this sum passed to the grandson under the residuary clause thereof or whether the testator during his lifetime set apart this fund as a trust fund for the executive committee, and constituted himself as trustee.

Upon the death of the testator the executor named in the will filed his bill asking the aid of the chancery court in the administration of the estate. The will is filed as an exhibit with the bill. The sixth paragraph of the bill contains a copy of the letter under which the executive committee makes claim to the two notes, aggregating $9,000.00, and is as follows: "That previous to the death of the said J. Newton Wilson he informed Samuel W. Shaver that he had left among his papers in the iron safe at the Edinburg Mill an envelope containing certain notes amounting to nine thousand dollars ($9,000.00) and informed the said Shaver of his desire that the same should not be embraced among the other property passing under the will of said Wilson, but that the said nine thousand dollars ($9,000.00) of notes should be collected by said Shaver and disposed of in accordance with written instructions in a letter in the envelope in which the said bonds were contained; that the said Shaver since the death of the said J. N. Wilson obtained the said envelope from the said safe, together with the letter of instructions aforesaid as to disposition of the said bonds when collected; that the said letter or writing, which is wholly in said J. N. Wilson's handwriting, is in the following words and figures:

"Massanutten Springs, Va., July 19, 1917.
"Samuel W. Shaver, Esq.
"My dear friend:

"This will be the last letter you will ever read from me in my lifetime.

"I hereby assign to you the note of Edinburg Milling Company for $6,000.00 to be collected by you and direct you to pay same to the trustees or to executive committee of Ministerial Relief Fund of Louisville, Ky., which I want to be known as the Henrietta G. and Claude H. Wilson memorial. Please execute this trust for your life-long partner and friend.

"J. NEWTON WILSON.

"My friend Sam'l W. Shaver any other bonds, notes or moneys in this envelope to go to same fund or anything of money value and say nothing to any person.

"Your friend,
"J. NEWTON WILSON.

"Oct. 19, 1918."

That at the time said Wilson notified the said Shaver as to said envelope and contents, he also verbally expressed the wish and desire that said Shaver should not compel payment of the said bonds so as to embarrass the Edinburg Milling Company, the makers of the said notes, but should grant reasonable indulgence to the maker of the said notes; that the said notes contained in said envelope were as follows: A note executed by the Edinburg Milling Company payable to said J. N. Wilson one day after date, dated July 1, 1917, for the sum of six thousand dollars ($6,000.00), upon which note numerous credits from time to time had been indorsed in the handwriting of the said J. N. Wilson, the last being of date July

1, 1923, and the other note is executed by the said Edinburg Milling Company dated November 20, 1919, payable on demand for three thousand dollars ($3,-000.00) and on it also are endorsed numerous credits in the handwriting of the said J. N. Wilson, the last being July 1, 1923; that upon the back of the said $6,000.00 note, in the handwriting of the said J. N. Wilson and over his signature, are indorsed the words: "I assign within note to Samuel W. Shaver this nineteenth day of October, 1918" and on back of the said $3,000.00 note, in the handwriting of the said J. N. Wilson, is a similar indorsement, dated November 20, 1919; that the said Edinburg Milling Company was the trade name under which the said Grandstaf Mill property was operated by Geo. W. Ring and the said J. N. Wilson after the death of said Claude H. Wilson.

In its answer to the bill the executive committee in claiming the fund in dispute, among other things, avers: "Wilson, by virtue of his acts and statements as aforesaid, especially by the statement in said letter of July 19, 1917, to wit: 'Please execute this trust for your life-long partner and friend,' made a voluntary declaration of trust of the contents of said envelope to-wit, the said two notes aggregating nine thousand dollars ($9,000.00) which were thereby set apart as a trust fund for the purposes aforesaid, and the same is separate and distinct from the other estate of the said Wilson."

The other defendants answered, and depositions were taken, after which the court held that the letter and statements of Wilson did not amount to a declaration of trust in favor of the executive committee, but that he undertook to make an assignment or gift of the notes which was ineffectual and incomplete because there was no delivery of the notes.

In a written opinion made a part of the record in the case the learned chancellor said in part: "In the brief of counsel for the executive committee is the following: 'The question presented to the court is whether J. Newton Wilson created a valid trust in favor of the executive committee above mentioned, so that the two notes and the proceeds of their collection are to be held by Samuel W. Shaver as trustee for the executive committee, or, do these notes pass under the residuary clause of Wilson's will.'

"In the note of counsel for the Wilson estate is the following: 'As between the beneficiaries under the will of J. Newton Wilson and the Memorial Relief the question is: Did J. Newton Wilson by his letter of July, 1917, supplemented with the further statement of October 19, 1918, constitute an express trust enforceable by a court of equity?'

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

[1] "In 39 Cyc. p. 57, cited in note of counsel for executive committee, the law is stated as follows: 'While it is essential to the creation of a trust that there be an explicit declaration of trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created, no formal, technical, or particular words are necessary, but it is sufficient if an intention to create a trust and the subject matter, purposes, and beneficiary are stated with reasonable certainty. Indeed the use or non-use of technical words, "trust" and "trustee," is not controlling although it will be given weight.'

[2] "In *Poff* v. *Poff*, 128 Va. 62, 82, 104 S. E. 719, cited by both sides, the law is stated as follows: 'Besides the last mentioned exception to the rules that some act of the donor making, or held to be equivalent to the making of, the transfer of the possession of the

subject to the gifts from himself to the donee, or to some one in trust for the latter, is essential to the execution, and hence to the validity of the gift *inter vivos*, as well as *causa mortis*, there is one other exception, and only one, namely, in case of a gift by way of declaration of trust. In such case, the donor does not part with the possession of the subject of the gift, but retaining it, declares that he holds it in trust for the donee.' See 'Gifts of Personalty' by Prof. Graves, 1 Va. Law Reg. 878. On page 878, Prof. Graves continues as follows: 'It remains to consider a mode of making a gift with the aid of a court of chancery which is in direct violation of the rule which declares that delivery is essential to a valid gift of chattels. This is a gift by way of declaration of a trust, of which there are many exceptions in the decided cases. In equitable assignments, although the legal title does not pass, there is still a delivery to the donee of the bond, note, stock or other chose in action. But when a gift is made by way of declaration of trust the donor does not part with the possession of the subject matter of gift, but retaining it, declares that he holds it in trust for the donee. The legal owner of the property may by one or other of the modes recognized as amounting to a valid declaration of trust, constitute himself a trustee, and without an actual transfer of the legal title, may so deal with the property as to deprive himself of the beneficial ownership, and declare that he will hold it from that time forward in trust for the other person. It is true he need not use the words, 'I declare myself a trustee,' but he must do something which is equivalent to it, and use expressions with that meaning.

"And in the same case it is said that the words: 'I undertake to hold this bond for you,' would undoubtedly amount to a declaration of a trust.

[3, 4] "And at page 879, Prof. Graves states that 'we have now seen that a gift may be valid by way of equitable assignment and also by way of declaration of trust—the donor declaring himself trustee.   But it sometimes happens that a donor with a gift intent, neither declares himself trustee nor makes an effectual equitable assignment, although his purpose is evidently to assign, and not to create a trust.   The question then arises, can the defective assignment be treated as tantamount to a declaration of trust, and the gift sustained on that theory.   *   *   *   *   In other words, a donor is legally put to his election whether he will assign or declare a trust, and if he elects the former, as is shown by his attempted assignment, the gift must stand or fall as the donor designated to make it, and if *ineffectual as an assignment, it can derive no assistance from the doctrine of declaration of trust.* Otherwise, it has been said, 'there would never be a case when an expression of present gift would not amount to a declaration of trust, which would be carrying the doctrine too far.'

"In 26 R. C. L. p. 1182, the law is stated as follows: 'There is no prescribed form for the declaration of a trust, whatever evinces the intention of the party that the property of which he is the legal owner shall beneficially be another's is sufficient.   The intention must be plainly manifest, and not derived from loose and equivocal expressions of parties, made at different times and upon different occasions, but any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing.   It is not necessary that the terms "trust" and "trustee" should be used.   The donor need not say in so many words, "I declare myself a trustee," but he must do something which is equivalent to it, and use expressions which have that meaning   *   *.'

[5] "In this case, Wilson continued to hold the notes in question to the time of his death and collected the interest, which he applied to his own use, and there is nothing in the proof to indicate that he intended to deprive himself of the beneficial ownership in same and that he declared or did what was equivalent to the same that he held said notes in trust for some one else.

"In the cases cited by counsel for the executive committee there was proof of some unequivocal act, the effect of which the court decided; in this case there is an incomplete assignment, every act and declaration in connection therewith, is entirely consistent with an intended assignment, which for some reason, not shown by the evidence, was not completed by a delivery of the notes in question; and whether such failure proceeded from a change of mind by Wilson or because he did not know delivery was necessary, does not appear from the evidence. It is not the duty of the court to base its conclusions on what Wilson may have intended, but to get at what he did do, based on his acts and declarations, and all other evidence in the case.

"Samuel W. Shaver, a witness called by the executive committee, on direct examination answered as follows: 'Ques. 16. State whether or not he asked you to keep this fund separate from his other estate?' 'Ans. I don't know if he made mention of those words, but his intention, as he expressed it, was that this should not come under his estate, but that it would be handled by me personally *by assigning the bonds to me.* (Italics supplied.) His idea was that I could just take and handle that money and turn it over to this board as a memorial fund to his son and first wife.'

[6] "After an exhaustive examination of the evidence and the authorities cited, it seems plain that J. Newton Wilson intended, at one. time, to *make an assignment which he did not complete;* and having elected to make an assignment which failed, the defective assignment cannot be treated as equal to a declaration of trust, and the gift sustained on that theory. There is nothing in the evidence to indicate that there was any declaration by Wilson except in connection with the attempted assignment and no declaration was made by him at any time that he was not the beneficial owner of the notes in question and that he held same in trust for any one else.

"It is, therefore, plain that the notes in question pass to the executor, to be administered as a part of the estate of J. Newton Wilson and a decree can go to that effect."

[7] It may be well to add, as strengthening the view of the purport of the letter of July 19, 1917, that on its face it does not contemplate the creation of a trust or the declaration of trusteeship in the donor. The language used is: "I hereby assign to you the note of the Edinburg Milling Company." Then follows the direction to collect and pay over. The only trust conferred or created by the letter is contained in the concluding sentence: "Please execute this trust for your life-long partner and friend." The trust reposed in the friend and partner was to collect the note, which had been assigned (as the donor thought) to his friend, and to pay it over to the executive committee. The subsequent endorsements on the notes indicate that Wilson was completing the assignment he thought he had theretofore made.

We are of opinion therefore to affirm the decree of the circuit court.

*Affirmed.*