Filed:  May 1, 2008

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-1200
(4:06-cv-00145-HCM)

In Re:  BRUCE E. STRACK,

                                                    Debtor.
----------------------------

KUBOTA TRACTOR CORPORATION, a California
corporation,

                              Plaintiff - Appellant,

         versus

BRUCE E. STRACK,

                              Defendant - Appellee,

         and

US TRUSTEE,

                                                    Trustee.


O R D E R


        The court amends its opinion filed March 11, 2008, as follows:

        On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

        On the cover sheet, section 6 -- the status line is changed to read, "Reversed by published opinion."

On page 2 – the reference to the use of unpublished opinions as precedent is deleted.

For the Court - By Direction


    /s/ Patricia S. Connor

Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: BRUCE E. STRACK,
                            *Debtor.*

---

KUBOTA TRACTOR CORPORATION, a
California corporation,
                            *Plaintiff-Appellant,*

v.

BRUCE E. STRACK,
                            *Defendant-Appellee,*

and

US TRUSTEE,
                            *Trustee.*

No. 07-1200

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry Coke Morgan, Jr., Senior District Judge.
(4:06-cv-00145-HCM; BK-05-53453; AP-06-05002-DHA)

Argued: January 30, 2008

Decided: March 11, 2008

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

---

Reversed by published opinion. Judge Duncan wrote the opinion, in
which Judge Niemeyer and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Ryan Ashby Shores, HUNTON & WILLIAMS, Washington, D.C., for Appellant. Carolyn Louise Camardo, MARCUS, SANTORO & KOZAK, P.C., Chesapeake, Virginia, for Appellee. **ON BRIEF:** R. Hewitt Pate, HUNTON & WILLIAMS, Washington, D.C., for Appellant.

## OPINION

DUNCAN, Circuit Judge:

In October 2005, Appellee Bruce Strack ("Strack"), along with his wife, filed for relief under Chapter 7 of the Bankruptcy Code. Strack listed Appellant Kubota Tractor Corporation ("Kubota") as a creditor holding an unsecured judgment claim against him for approximately $124,000. Kubota later brought an adversary proceeding against the Stracks in the United States Bankruptcy Court for the Eastern District of Virginia, challenging the pending discharge of the debt under two statutory exceptions to the presumption of dischargeability: "defalcation while acting in a fiduciary capacity," under 11 U.S.C. § 523(a)(4), and "willful and malicious injury by the debtor," under 11 U.S.C. § 523(a)(6). The bankruptcy court found neither exception to apply and the debt therefore dischargeable. On appeal, the United States District Court for the Eastern District of Virginia affirmed the bankruptcy court's Opinion and Order. Because we find that the debt arose by reason of Strack's "defalcation," or nonfraudulent default, while he was acting in a fiduciary capacity, we find that § 523(a)(4) renders the debt non-dischargeable, and reverse the judgment of the district court. Having found the debt non-dischargeable under § 523(a)(4), we do not reach Kubota's claim under § 523(a)(6).

### I.

The relevant facts here are not in dispute. Strack served as President and majority owner of Enterprise Equipment Inc. ("Enterprise").[1]

---

[1]Strack, together with his wife Stephanie Strack, owned sixty percent of Enterprise's stock.

Enterprise sold farming equipment, such as tractors, and parts for such equipment at its retail facility located in York County, Virginia. Kubota was one of the numerous agricultural machinery manufacturing companies for which Enterprise acted as an authorized dealer. In his capacity as Enterprise's President, Strack agreed to personally guarantee Enterprise's indebtedness to Kubota. In September 2003, Strack also signed Kubota's Dealer Sales and Service Agreement (the "Agreement"), which forms the basis of this appeal.

The Agreement's purpose was to renew Enterprise's "right to purchase and resell [Kubota] products." J.A. 171. Pursuant to the Agreement, Kubota sold "whole goods," or equipment, to Enterprise through a "floor-planning" arrangement.[2] Under such an arrangement, a dealer can purchase goods from a manufacturer without paying for the goods up front. Here, Enterprise would order a piece of equipment from Kubota for either immediate resale or to hold in its product inventory. Although no money changed hands, Enterprise's purchase of the equipment would, in substance, result in the automatic issuance of a "loan" to Enterprise from Kubota for the purchase price amount. If an interest-free promotion was in place, as appears to have frequently been the case, Kubota did not require payment of either principal or interest on this "loan" for the first several months immediately following the date of Enterprise's purchase. If no such program was in place, Enterprise was required to make interest payments during this period. Under either scenario, at the end of the period the entire purchase price became due to Kubota.

"To secure the performance and payment of all obligations of [Enterprise] to [Kubota]," Enterprise granted to Kubota a security interest in, and lien on, the equipment. J.A. 26. To further protect Kubota's interests, the Agreement prohibited Enterprise from disposing of, or selling, any equipment "except in the ordinary course of business upon customary terms for value received." J.A. 27. The following terms governing Enterprise's handling of the proceeds from these sales form the crux of this appeal:

---

[2]Kubota also sold parts to Enterprise on "open account," under which Enterprise could order the parts and be billed at a later date. Those sales, however, are not relevant to this appeal.

> Until [Enterprise] shall have made settlement with [Kubota] of the full amount due to [Kubota] with respect to any [equipment] disposed of by [Enterprise], *[Enterprise] shall segregate the proceeds and hold the same in trust for [Kubota].* [Enterprise] shall be entitled to transfer proceeds free of trust if at, or prior to, the time of such transfer, the payment due from [Enterprise] to [Kubota] shall be assured to the satisfaction of [Kubota].

*Id.* (emphasis added).

Kubota would conduct regular inventory audits at Enterprise's facility to determine whether Enterprise had sold any Kubota equipment *without* then "segregating the proceeds" and remitting them to Kubota. J.A. 27, 151. Enterprise frequently sold equipment in such fashion, a breach Kubota dubs as "going out of trust," and had to repay Kubota at the conclusion of the audits. Enterprise was able to repay Kubota until March 2004, at which time its financial condition deteriorated.

By July 2004, Enterprise was indebted to Kubota for nearly $200,000. According to Strack, Enterprise was unable to repay Kubota because all proceeds garnered were used to pay employees, taxes, and other expenses necessary for Enterprise to remain in business. Strack went to great lengths to try to keep Enterprise afloat, even borrowing against the equity in his home and placing those funds into Enterprise's account. Strack managed to reduce Enterprise's debt to Kubota to approximately $124,000 by returning parts and inventory that Enterprise had previously purchased and by making payments whenever possible.[3] Despite these efforts, Enterprise

---

[3]Strack also tried to find a buyer for the Kubota dealership rights, and thought he had done so in Irvine Spurlock—the owner of another lawn and garden company in Virginia. On July 21, 2004, Spurlock sent Kubota's manager a letter offering to pay up to $150,000 on Enterprise's debt in exchange for a new Kubota-authorized dealership encompassing Enterprise's territory. Kubota then provided forms to Enterprise, which were completed by Strack, that terminated Enterprise's Agreement with Kubota. Strack felt that his debt with Kubota had been settled at that time, as all Kubota equipment was removed by Kubota from Enterprise's

ultimately went out of business, and was unable to make any further payments to Kubota. Kubota subsequently sued Strack in the Circuit Court for the County of York, Virginia, pursuant to his personal guarantee of Enterprise's indebtedness, for the balance due under the Agreement. In the proceedings, Strack admitted the legitimacy of the debt and Kubota obtained a judgment against him on July 18, 2005 in the amount of $123,914.96.

On October 14, 2005, the Stracks filed for Chapter 7 relief and listed Kubota as a creditor. Kubota later filed an adversary proceeding with the bankruptcy court, alleging that such debt should be non-dischargeable under one of two exceptions to the presumption of dischargeability: defalcation by a fiduciary, 11 U.S.C. § 523(a)(4),[4] or willful and malicious injury by the debtor, 11 U.S.C. § 523(a)(6).[5] The bankruptcy court rejected Kubota's arguments and found the debt dischargeable. Specifically, the court found that (1) the Agreement did not unequivocally create an "express trust" between Kubota and Enterprise and therefore the debt did not arise while Strack was acting as a fiduciary for the purposes of § 523(a)(4);[6] and (2) Strack's efforts

---

store and Strack did not hear from Kubota for several months. Strack later learned, however, that the deal between Spurlock and Kubota fell through and Kubota still held Enterprise liable for the accrued debt. Feeling still obligated to repay Kubota even after the Agreement was terminated, Strack subsequently admitted the legitimacy of the debt in a state court proceeding. Kubota was thus able to obtain the judgment against Strack that forms the predicate of this dispute.

[4]Section 523(a)(4) prohibits the discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

[5]Section 523(a)(6) prohibits the discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

[6]The bankruptcy court also recapitulated its earlier holding that "the term 'fiduciary' as used in § 523(a)(4) [is restricted to] 'the class of fiduciaries including trustees of specific written declarations of trust [i.e. express trusts], guardians, administrators, executors or public officers and, absent special considerations, [does not] extend to the more general class of fiduciaries such as agents, bailees, brokers, factors and part-

to repay Kubota negated the "willful" requirement of § 523(a)(6). Kubota appealed the bankruptcy court's judgment, unsuccessfully, to the United States District Court for the Eastern District of Virginia. This appeal followed.

II.

Kubota maintains that the bankruptcy court and district court erred in finding that Strack's debt was not excepted from discharge under either § 523(a)(4) or § 523(a)(6). "We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *Three Sisters Partners, LLC v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 847 (4th Cir. 1999). Thus, here, we examine the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *See* Fed. R. Bankr. P. 8013; *IRS v. White (In re White)*, 487 F.3d 199, 204 (4th Cir. 2007).

Generally, "all legal obligations of the debtor, no matter how remote or contingent" are potentially dischargeable in bankruptcy. *See* H.R. Rep. No. 95-595, at 309 (1977); *see also Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007). Congress, however, has provided, in 11 U.S.C. § 523, several limited exceptions to this presumption of dischargeability, which we must construe narrowly "to protect the [Bankruptcy Act's] purpose of providing debtors a fresh start." *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).

---

ners.'" J.A. 156-57 (quoting *E.L. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 828 (Bankr. E.D. Va. 2003). This court has not yet had the opportunity to determine, in a published opinion, the proper contours of the term "fiduciary" as used in § 523(a)(4). *But see Harrell v. Merchant's Express Money Order co. (In re Harrell)*, 173 F.3d 850, at *3 (4th Cir. 1999)(unpublished table decision) (holding that "under [§ 523(a)(4)], a fiduciary is limited to instances involving express or technical trusts"). Here, the dispute concerns only whether an express trust was created, which, as both parties acknowledge, is clearly sufficient to establish a fiduciary relationship for the purposes of § 523(a)(4). *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333-34 (1934). Thus, because the reach of the term "fiduciary" is not squarely presented here, we decline to elaborate on the question further.

Kubota's claim turns on the applicability of two such exceptions, § 523(a)(4) and § 523(a)(6). As the party challenging dischargeability, Kubota bears the burden of proving the debt non-dischargeable by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A.

We first address Kubota's argument that § 523(a)(4), excepting from discharge those debts "for fraud or defalcation" committed by one "acting in a fiduciary capacity," proscribes the discharge of Strack's debt. To prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation. *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997). Here, the second criterion, "defalcation," or non-fraudulent default, is not in dispute.[7] However, since Kubota is attempting to prevent the discharge of Strack's debt based on his guarantee of Enterprise's indebtedness, Kubota must demonstrate not only that Enterprise defalcated while acting in a fiduciary capacity for Kubota, but also that Enterprise's actions can be attributed to Strack. *See Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266, 270-71 (4th Cir. 2002) (requiring more than the existence of a fiduciary duty on behalf of the corporation to find that the corporation's officers' indebtedness, based on their guarantees of the corporation's debt, was for "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4)).

The courts below rejected Kubota's claim because of their view that Kubota failed to make the preliminary showing that a fiduciary

---

[7]To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of . . . 'embezzlement' or even 'misappropriation.'" *In re Ansari*, 113 F.3d at 20. "[N]egligence or even an innocent mistake which results in . . . [the] failure to account is sufficient." *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001). Here, Enterprise, by Strack's instruction, failed to remit the proceeds from the sale of Kubota equipment as required by the Agreement, instead using the funds for Enterprise's own expenses. Thus, both Enterprise's and Strack's actions constitute defalcation.

relationship existed between it and Enterprise. Kubota urges us to reverse that finding, arguing that the Agreement created an express trust between the parties, giving rise to a fiduciary duty on behalf of Enterprise to protect the proceeds from the sale of Kubota equipment.[8] In finding that a mere debt, and not a trust, was created, the bankruptcy court, Kubota asserts, erred by improperly focusing on the chattel itself—the equipment—rather than on the "*proceeds* flowing from the sale of the chattel." Appellant's Br. at 26. This "error," in Kubota's view, was perpetuated by the district court. With due respect for those courts' analyses, we agree with Kubota.

As both parties acknowledge, the creation of an express trust can give rise to the requisite fiduciary duty under § 523(a)(4). *See Davis*, 293 U.S. at 334. The parties also agree that in determining whether such a trust was established, we look to the law of the Commonwealth of Virginia, where the trust was allegedly created, for guidance. *See Am. Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir. 1996) ("[W]hile federal law creates the bankruptcy estate, . . . state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework.").

Under Virginia law, "[a]n express trust is based on the declared intention of the trustor," manifested either in writing or through the parties' actions. *Leonard v. Counts*, 272 S.E.2d 190, 194 (Va. 1980); *see also Woods v. Stull*, 30 S.E.2d 675, 682 (Va. 1944) ("In order to constitute an express trust there must be either explicit language to that effect or circumstances which show with reasonable certainty that a trust was intended to be created."). Although the parties' use of the word "trust" is to be given great weight, it is not determinative. *See Exec. Comm. v. Shaver*, 135 S.E. 714, 716 (Va. 1926); *see also Broaddus*, 26 S.E.2d at 36 (Va. 1943) (recognizing that an express

---

[8]As will be discussed further below, under Virginia law, an express trust is created when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party. *See Peal v. Luther*, 97 S.E.2d 668, 669 (Va. 1957). If such a trust is created, the beneficiary of the trust "is equitable owner of the trust property. If the trustee transfers the trust property . . ., or if the trustee becomes insolvent, the beneficiary is still entitled to the property." *Broaddus v. Gresham*, 26 S.E.2d 33, 35-36 (Va. 1943).

trust can be established without use of any "technical words"). All that is necessary is the "unequivocal" intent "'that the legal estate [be] vested in one person, to be held in some manner or for some purpose on behalf of another.'" *Old Republic Nat'l Title Ins. Co. (In re Dameron)*, 155 F.3d 718, 722 (4th Cir. 1998) (quoting *Broaddus*, 26 S.E.2d at 35). At bottom, "[i]f the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If[, however,] the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created." *Broaddus*, 26 S.E.2d at 37.

In sum, whether an express trust was created between Kubota and Enterprise depends on the intent of the parties as evinced by the Agreement. As noted above, the Agreement provided that if Enterprise sold a piece of equipment to a third party before it remitted to Kubota the total payment due for that equipment, Enterprise "*shall segregate the proceeds [from the sale] and hold the same in trust for [Kubota].*" J.A. 27 (emphasis added). Enterprise was entitled to use or transfer the proceeds "*free of trust*" *only* when Kubota was repaid to its "satisfaction." *Id.* (emphasis added). In addition to twice using the word "trust" to describe the interest in question, this language "unequivocally show[s] an intention" that Enterprise take possession of the proceeds, segregate them from its own funds, and "h[o]ld" them "on behalf of," Kubota. *In re Dameron*, 155 F.3d at 722 (internal quotations omitted). Although this provision forms a relatively small part of the Agreement, it demonstrates, "with reasonable certainty," the intent to establish an express trust. *See Woods*, 30 S.E.2d at 682. Because such a trust was created, we find the existence of a fiduciary relationship between Enterprise and Kubota with respect to the sales proceeds. *See id.*; *In re Ellison*, 296 F.3d at 270-71 (acknowledging that a fiduciary relationship existed between two corporations when the agreement between them provided that sales proceeds "were the 'property of the carriers,' to be 'held in trust' by [the debtor] 'until satisfactorily accounted for.'").

Notwithstanding the above express language, the bankruptcy court determined that the Agreement was insufficient to create an express trust, relying primarily on the Supreme Court's decision in *Davis*, 293

U.S. at 333-34. The *Davis* Court, applying the law of Illinois, found that a writing characterized as a "trust receipt" was insufficient to transform an ordinary debtor-creditor relationship into a fiduciary relationship. 293 U.S. at 333-34. The bankruptcy court here held that because the Agreement between Enterprise and Kubota, like the agreements forming the basis of the relationship between the parties in *Davis*, provided for title to the equipment to pass to Enterprise and for Kubota to retain merely a security interest in it, the Agreement created a standard debtor-creditor relationship, not an express trust. The district court agreed.

In so holding, however, both the bankruptcy court and the district court failed to recognize two critical distinctions between this case and *Davis*. First, in *Davis*, the creditor was claiming the existence of a trust with respect to the chattel—the automobile. Here, the proper focus is on the *proceeds* from the sale of the chattel. Even if Enterprise's holding of title to the equipment would preclude the finding of a trust relationship between the parties with respect to that equipment, *Davis* still would not foreclose the existence of an express trust with respect to the *proceeds* from the sale of that equipment. Furthermore, and more critically, the language of the Agreement here, unlike the incidental labeling of a document as a "trust receipt" in *Davis*, in no uncertain terms demonstrates "the intention . . . that the [proceeds] . . . be kept or used as a separate fund for the benefit of [Kubota]." *See Broaddus*, 26 S.E.2d at 36-37 (comparing the intent necessary to create a trust with that necessary to create an ordinary debt). Unlike in a standard debtor-creditor relationship, in which "the person receiving the money [has] the unrestricted use thereof, being liable [only] to pay a similar amount . . . to the payor," *id.*, Enterprise was not entitled to treat the proceeds as its own and use them as it wished. Rather, Enterprise was required to separate the proceeds, hold them for Kubota's benefit, and use them only once Kubota allowed. *See* J.A. 27. Thus, we find that the Agreement gave rise to an express trust and a consequent fiduciary relationship between Enterprise and Kubota, notwithstanding the guidance of *Davis*.

## B.

Having concluded that the debt arose due to Enterprise's defalcation while it was acting in a fiduciary relationship with Kubota, we

must now determine whether Strack's *personal* indebtedness to Kubota, arising out of his guarantee of Enterprise's debt, is therefore non-dischargeable under § 523(a)(4). We need not labor long over this issue, however. The facts of this case are analogous to those in our decision in *In re Ellison*, 296 F.3d 266, and therefore must yield the same result.[9]

In *In re Ellison*, the debtors were officers, directors, and shareholders of a West Virginia corporation. The debtors' corporation entered into an express trust agreement with another corporation, ARC, giving rise to a fiduciary relationship between the two entities. The debtors also agreed to personally guarantee their corporation's indebtedness to ARC. The debtors' corporation later breached the trust agreement and amassed a significant debt. When the debtors subsequently filed for bankruptcy under Chapter 7, ARC challenged the dischargeability of the debt under § 523(a)(4). This court found the debt non-dischargeable based on the following factors: (1) the debtors personally guaranteed the indebtedness; (2) the indebtedness arose due to defalcation or "the breach of a fiduciary relationship between the two corporations"; (3) the debtors "were personally responsible for the conduct that gave rise" to their corporation's breach or defalcation; and (4) the debtors "conduct amounted to a breach of their fiduciary duty" to their corporation. *Id.* at 270-71.

The same "confluence" of factors present in *In re Ellison* exists here. *See id.* at 271. First, Strack personally guaranteed Enterprise's debt to Kubota. Second, as determined above, the indebtedness arose from Enterprise's defalcation or failure to remit the proceeds to Kubota as the Agreement required. Third, Strack was personally responsible for this defalcation by willfully violating the Agreement and using the proceeds owed to Kubota for other purposes. And, finally, this wrongful conduct constituted a breach of the fiduciary duty that Strack owed to Enterprise as the corporation's President. *See Adelman v. Conotti Corp.*, 213 S.E.2d 774, 779 (Va. 1975) ("Under Virginia law an officer of a corporation, in his dealings with the cor-

---

[9]We note that this court's decision in *In re Ellison* was based, in part, on West Virginia law. However, Virginia law on this subject does not differ substantially from that of West Virginia. Thus, we find a similar outcome to be warranted here.

poration, has the same duty of fidelity which arises in dealings between a trustee and a beneficiary of the trust."). We therefore conclude, like this court did in *In re Ellison*, that Strack's indebtedness to Kubota arose from his "defalcation while acting in a fiduciary capacity" and is therefore excepted from discharge in bankruptcy under 11 U.S.C. § 523(a)(4).[10]

### III.

For the foregoing reasons, the judgment of the district court is

*REVERSED*.

---

[10]Because we find Strack's debt non-dischargeable under § 523(a)(4), we do not reach Kubota's alternative argument under § 523(a)(6).